STATE *vs.* INTOXICATING LIQUORS

and

AMBROSE H. COOK, Claimant.

Washington.   Opinion December 5, 1914.

*Bailee for Hire.   Claimant.   Common Carrier.   Intoxicating Liquors.*
*Possession.   Search and Seizure.*

1.  The claimant had the liquors in his possession to be transported to Campobello, New Brunswick.   He was a bailee for hire, and as such, like a common carrier, had a special title which gave him a legal right to the custody as against one having no right.

2.  The claimant Cook filed his claim and appeared and testified in the case.   He claimed that he was hired by Calder, the consignee of the liquors, to transport said liquors to Campobello, but on arrival there found the water so low that he could not land and returned to Eastport for supper, intending to return to Campobello on flood tide.   Before he could return and complete his contract, the liquors were seized.   His credibility was not impugned and his conduct seemed honest, and so far as Calder is concerned, it might reasonably be inferred that he was attempting to avoid the custom laws of New Brunswick, rather than the prohibitory laws of Maine.

On report.   Claim sustained.   Order to issue for the return of the liquor seized to the claimant.

This is a process for search and seizure of intoxicating liquors.   The liquors were taken from a boat owned and in possession of Ambrose H. Cook, in Eastport, Maine.   At the hearing in the Eastport Municipal Court on the 29th day of May, 1913, Ambrose H. Cook made claim for said liquors, and the Judge of said Court ordered said liquors forfeited and turned over to the Sheriff, from which judgment said claimant appealed to the Supreme Judicial Court.   Upon the conclusion of the evidence in the Supreme Judicial Court, the case was reported to the Law Court, upon so much of the foregoing evidence as is legally admissible, the Law Court to render final judgment in accordance with the legal rights of the parties.

The case is stated in the opinion.

*H. J. Dudley,* County Attorney, for the State.

*L. H. Newcomb,* for claimant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

CORNISH, J. On May 29, 1913, eleven barrels containing intoxicating liquors and three barrels containing "Allwanta" beer arrived in Eastport via Eastern Steamship Company from Boston. The eleven barrels were marked by tag "Louis Calder, Campobello, N. B.," the three barrels of beer, "Michael J. Kerwin, Eastport, Maine." All fourteen were marked with the letter "K" surrounded by a diamond. On June 5, 1913, the claimant, the owner of the boat "Alice M," accompanied by the consignee, Louis Calder, took the eleven barrels from the Eastern Steamship Company wharf, loaded them into his boat and sailed away for Campobello, an island belonging to the province of New Brunswick and three miles distant from Eastport. Calder, whose home was in Campobello, accompanied him. On reaching Campobello Calder landed, but Cook returned with the liquors to Eastport, moored his boat nearly opposite his own house and went home to supper. While there, an officer seized the eleven barrels, and removed them from the boat, obtained a warrant next morning, and libelled them. At the hearing in the lower Court Cook appeared as claimant, but the liquors were ordered forfeited, and after appeal the case was brought to the Law Court on report.

It is necessary to consider only two questions, were the liquors intended for illegal sale within this State, and was the claimant entitled to their custody? *State* v. *Intoxicating Liquors,* 112 Maine, 138.

The claimant, Cook, not only filed his claim, but appeared and testified in the case. He states that he was employed by Calder to transport these liquors to Campobello, that he started for that purpose, that on arriving at the island they found low water and could not land the liquors until the tide was up, and Calder told him to go back home for supper and return to Campobello on flood tide. This he proceeded to do, but the liquors were seized before he could return and complete his contract.

But the State claims that Calder's part in the transaction was a mere blind; that, although consigned in his name from Boston, these eleven barrels were really intended for Michael J. Kerwin, the consignee of the three barrels of non intoxicating beer, and who, the officer said, was engaged in the liquor traffic in Eastport. As intending to prove this theory the State calls attention to the fact that the eleven barrels consigned to Calder, as well as the three consigned to Kerwin, were all marked with the diamond K, that the tags with Calder's name had been removed after being taken from the Steamship Company, that Calder was put ashore at Campobello but the liquors came back to the American side and were there when seized. These facts certainly do cast suspicion upon the good faith of the transaction, but we do not think they outweigh the positive statements of Cook. He testifies emphatically that his contract was with Calder and not with Kerwin, that he was to land the liquors in Campobello and not in Eastport, and that the reason for not doing so was the honest one of the lowness of the tide. His credibility is not impugned, his conduct seems honest, and so far as Calder is concerned it might be reasonably inferred that he was attempting to avoid the custom laws of New Brunswick rather than the prohibitory law of Maine.

The second point is also established by the claimant. He had the liquors in his possession to be transported to Campobello. He was a bailee for hire and as such, like a common carrier, he had a special title which gave him a legal right to the custody as against one having no right. *State* v. *Intoxicating Liquors*, 83 Maine, 158.

The entry must be,

*Claim sustained; order to issue for the return of the liquors seized, to the claimant.*